19268

Mitchell V. SANDERS, by his Guardian *ad Litem,* C. E. Parris, Appellant, v. WESTERN AUTO SUPPLY COMPANY, Respondent

(183 S. E. (2d) 321)

*Messrs. Odom, Nolen & Foster,* of Spartanburg, *for Appellant,*

*Messrs. Thomas W. Whiteside and Horace C. Smith,* of Spartanburg, *for Respondent,*

August 16, 1971.

Brailsford, Justice.

Five-year-old Mitchell Sanders was seriously injured when his right hand came in contact with the blade of a riding lawn mower being operated by his father. He sued Western Auto Supply Company, the vendor of the mower, alleging that the cause of his injury was the defective design of the machine, which made it unreasonably dangerous to those likely to come in contact with it while being used for its intended purpose. By its answer, the defendant denied all allegations charging it with fault, and pled that the sole cause of plaintiff's injury was his own conduct in "running into or falling into and about the lawn mower being operated by his father * * *."

Upon the trial of the case, the jury returned a verdict for the defendant. The court refused plaintiff's motion for a new trial, and plaintiff appeals, charging error in the exclusion of certain testimony and in the refusal of requested instructions to the jury.

The defendant is a chain retailer, and the lawn mower was sold under its trade name. The case was tried on the theory that its responsibility was that of a manufacturer, and we so assume.

The twenty-four inch mower blade and its metal housing were suspended beneath the chassis. The flat top of the housing served as a deck on which the seated operator's feet rested. A lip, extending some four inches downward from the edge of the deck to near ground level, completely surrounded the blade except at the discharge chute—an opening, some ten or twelve inches in length, along the side of the blade housing, immediately behind the right front wheel. Here, the slightly recessed deck extended only one and one-half inches beyond the revolving blade, which was otherwise guarded at the chute by a single bar located near ground level and bolted at each end to the outside of the housing lip. The edge of the deck was about an inch short of extending over the bar.

On the occasion of his injury, Mitchell, suddenly and unexpectedly, undertook to jump or climb upon the mower, or upon his father's back, from the rear. It is inferable from the evidence that he fell forward, his hand striking the deck, then slipping off the edge at the discharge chute and engaging the bar, which deflected it into the opening and injury-producing blade.

A well-qualified expert witness testified that the design of the blade housing at the discharge chute was defective from a safety standpoint in that the blade tips extended to within one and one-half inches of the edge of the deck, which was much closer than was customary in the trade, and the protective bar protruded beyond the edge of the deck, instead of being flush with or inside the opening, as was usual in the trade. As to the significance of the location of the bar, the witness testified:

"Q. So—Why would the bar be situated even with or inside the opening?

"A. So that anyone—any foot or hand or anything else going down wouldn't catch on that bar.

"Q. If an object were approaching this bar from a vertical angle or partially vertical angle, what would the location of the bar do to that object?

"A. If it hit on that bar, it would either bounce on the outside if it hit the outside edge of it or on the inside if it hit on the inside of the center of that bar.

"Q. If the bar were on the inside of that opening and an object came from a vertical angle, what would happen?

"A. It wouldn't hit the bar. The bar would be protected by the housing."

After testifying that extension of the deck over the chute would have made the machine safer, the witness was asked on cross-examination, in effect, whether he intended to testify that if this had been done, "this child could not possibly get his hand in it?", he replied, "The way he fell he couldn't."

Photographs of the mower, featuring the discharge chute, and the machine itself were in evidence. Overruling defendant's motion for a directed verdict, the trial judge held that the testimony and exhibits raised a submissible issue as to defendant's actionable negligence. This ruling is not challenged here. The issues on appeal are limited to claimed error in excluding certain testimony offered by plaintiff and in refusing certain instructions requested by him.

After plaintiff's expert witness had testified that one of the hazard-producing defects in the design of the discharge chute was that the housing did not extend over the protective bar, he was asked to estimate the cost of so extending it. Defendant's objection to this inquiry was sustained. Whereupon, counsel inquired; "Your Honor, may we have a conference in which we may submit authorities?" The court denied this request, stating: "No sir. Expense has nothing to do with that."

The factual issue for the jury was whether the defendant by its design of the discharge chute negligently created an unreasonable hazard which caused plaintiff's injury. This inquiry necessarily involved the feasibility, both from an economic and functional standpoint, of modifying the design so as to reduce or avoid the hazard. Therefore, the trial judge was mistaken in excluding the evidence upon the ground that cost had nothing to do with the issue. However, it is obvious from an inspection of the machine that the alleged fault in design could have been remedied without significant increase in the cost of defendant's product. If there was error in excluding testimony on so obvious a point, plaintiff was not prejudiced thereby.

Plaintiff excepts to the refusal of the judge to charge a request paraphrased from *Mickle v. Blackmon*, 252 S. C. 202, 166 S. E. (2d) 173 (1969), as follows: "The duty of care owed by the seller of a chattel is to take reasonable precautions in the light of the known risk, balancing the likelihood of harm, and the gravity of harm if

it should happen, against the burden of feasible precautions which would tend to avoid or minimize the harm."

The duty of care owed by the defendant in the design of its product was governed by general principles of negligence law which, in this respect, were adequately covered in the general charge. The court was not obliged to instruct the jury in the language selected by plaintiff from the *Mickle* opinion, which was not innovative and stated no principle of law not fairly encompassed by the instructions.

Plaintiff next complains of the refusal of a requested instruction, again based upon the *Mickle* opinion, respecting an automobile manufacturer's duty to minimize risk of injury to collision victims. The instruction was inapposite to the facts of this case and was properly refused.

Plaintiff's charge that the court erred in refusing his requested instructions on the issue of causation raises a much more serious question. We quote the request in relevant part:

"Negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, is the proximate cause of the injury. So that where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause, without which the injury would not have resulted, or to as great an extent.   *   *   *"

That this request embodied a sound proposition of law is undisputed. See 14 West's South Carolina Digest, Negligence, —61-62 (1952), and supplementary material. However, the order overruling plaintiff's motion for a new trial expresses the view that the instruction was inappropriate because there were no contributing or efficient causes of plaintiff's injury other than the delict charged against defendant. But the defendant specifically pled that plaintiff's injury was "caused solely and proximately by (his) running into or falling into" the lawn mower.

The jury was instructed that plaintiff could recover only upon proof that defendant was negligent and that its negligence was the proximate cause of plaintiff's injury. Both negligence and proximate cause were adequately defined.* The jury was also instructed that there was no issue in the case as to whether the father was negligent and that, because of his immaturity, the child could not be charged with negligence.

While these instructions were adequate to eliminate from consideration any issue of *negligence* by the father or child as a defense, the jury could still have believed, as the verdict indicates, that the conduct of either or both was a more direct cause of the injury than any defect in design. An instruction on concurrent causation was, therefore, required to properly guide the jury in its deliberations. Since the·requested instruction stated a sound principle of law, which was applicable to the case and not otherwise covered by the charge, its refusal was error, requiring a new trial.

Plaintiff complains of error in the court's refusal to charge the following request,

"In order for the Plaintiff to recover in this action, he must establish, by the preponderance of the evidence, the following facts:

"(a) That there was a defect in the product as a result of the manufacturing process or design,

"(b) That the defect made the product unreasonably dangerous, and

"(c) That the injury to the Plaintiff resulted from the defect."

which he construes as an instruction on "breach of warranty in contract." Suffice it to say that the request flatly contra-

---

* Quoting from the charge: "Now, proximate cause literally means the efficient cause, the direct cause, that cause without which there would not have been personal injury. That's somewhat technical language, so I'll rephrase it in a different manner. The plaintiff must show that the defective design, if that has been proved, due, caused, occasioned or resulted in the child's coming into contact with the revolving cutting agent. * * *"

dicted the general charge of the court, which conformed to the actionable negligence theory on which the case was tried and to which no exception was taken. The court did not err in refusing it.

Two additional questions relating to the instructions are argued in the brief. They are not likely to recur upon retrial and need not be considered.

Reversed and remanded.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.