1786

Albert B. DUNN, Respondent v. CHARLESTON COCA-COLA BOTTLING COMPANY and Sunbelt Coca-Cola Bottling Company, Inc., Appellants.

(415 S.E. (2d) 590)

Court of Appeals

*K. Lindsay Terrell*, of *Howell, Gibson & Hughes*, Beaufort, *for appellants*.

*John E. Parker*, of *Peters, Murdaugh, Parker, Eltzroth & Detrick*, Hampton, *for respondent*.

Heard Jan. 15, 1992; Decided Mar. 9, 1992.

Reh. Den. Mar. 25, 1992.

SHAW, Judge:

Respondent, Albert B. Dunn, instituted this products liability action against appellants, Charleston Coca-Cola Bottling Company and Sunbelt Coca-Cola Bottling Company, Inc., hereinafter Coke, alleging he sustained injuries after drinking a contaminated coca-cola. Coke appeals from a $165,000 jury verdict for Dunn. We affirm.

There are four issues before us on appeal: (1) whether the trial judge erred in asking the jury panel if they would be inclined to limit money damages in order to reduce insurance rates; (2) whether the trial judge erred in allowing Mr. Dunn to call a witness who was not previously identified in pretrial discovery; (3) whether the trial judge erred in failing to charge the jury as requested on strict liability; and (4) whether the trial judge erred in denying Coke's motion for a new trial *nisi remittitur*.

On or about the morning of March 27, 1986, Mr. Dunn drank a coca-cola from a six and one-half ounce bottle. He testified that the last swallow out of the bottle tasted like lye and it burned as if it had lye in it. Although he washed out his mouth and throat, it continued to burn. He looked at the bottle and discovered a piece of folded up wire and rusty material in the bottom of the bottle. The following day, he went to see his family doctor, Dr. Flowers, who sprayed his mouth for burns and instructed him not to wear his dentures. He continued to see Dr. Flowers for ten months at which point he developed an infection in his throat and was referred to Dr. Rand for an operation.

Following the incident, Mr. Dunn began having difficulty in swallowing. He testified that it hurts for him to take a breath, food becomes lodged in his throat and, if he gets strangled while eating, he coughs up the food. As a result, he can eat

only soft food and must gargle after every meal to keep the food from lodging in his throat. He can no longer hunt because he coughs all of the time and cannot call his dogs. He used to care for a garden but had to quit because it was painful to catch his breath. He cannot eat food in public for fear that he will cough up food. He stated this incident had ruined his life. Mr. Dunn's children corroborated their father's testimony about the incident and the effects it has had on his life. They stated his condition continues to deteriorate and he complains about his throat every day.

Over the course of years since this incident occurred, Mr. Dunn has sought treatment with numerous physicians. At trial, Dr. Flowers testified he saw Mr. Dunn the day after the incident and he found an irritation of the mucous membranes of the mouth and irritation of the throat which could have been caused by a chemical. In January of 1987, he referred Mr. Dunn to a Dr. Rand who performed surgery on Mr. Dunn. He continued to see Mr. Dunn regarding his problems with swallowing. In his opinion, the irritation in Mr. Dunn's mouth and throat was caused by his consumption of the contaminated coca-cola and this incident was the onset of Mr. Dunn's problems with his throat. He further stated that Mr. Dunn's condition was permanent and he would probably need future treatment.

Dr. Rand also testified. He operated on Mr. Dunn to remove the tip of his hyoid bone. Dr. Rand felt the surgery would ease the pain Mr. Dunn was suffering caused by a condition called gastroesophagel reflux. He thought the ingestion of the contaminated coca-cola aggravated this condition. Dr. Rand stated:

> What I really think happened with Mr. Dunn is that he became so disturbed about this incident and his whole life [became] focused on this issue of this coke and this contaminated and the burn and the illness that he had conjured in his own mind that the psychological and physical stresses of that tended to make in—you know, tended to make him develop this hyperacidity problem and he became fixated, he had a singleness thought. I mean, his whole life became involved in these symptoms. I mean, he—you know, he reported to me that he lost—he had

lost weight and that his neck hurt all the time and that his whole life really centered, the last five or six years, around this incident.

In his opinion, Mr. Dunn was going to have this condition for the rest of his life.

We first address the issue of the propriety of the *voir dire* examination. The record reveals Respondent requested and the trial judge posed the following to the jury panel:

All right, members of the jury panel, let me ask you this question. We all live in a modern world and we know that people have insurance for drivers and automobiles, and we have other—all types of insurance, which protects people who sell things, buy things, drive things, use things, and I don't know whether or not there's any insurance involved in this or not, I just don't have any idea, and I will tell you that it doesn't make a bit of difference, because the fact that somebody might or might not have insurance shouldn't affect the jury in any way. And so I'm going to ask you this question: Is there any member of the jury panel who holds an opinion or believes that jurors in a civil case should limit money damages, irrespective of the evidence, in order to reduce insurance rates, if so, please stand. Anybody got any feeling about that?

There was no response. Prior to this, the court asked counsel for Coke what he had to say about him posing this question to the jury panel. Coke simply requested he not ask the question but stated no grounds for objection and at no time moved for a mistrial on this basis.

Coke contends the trial judge erred in asking this question during his *voir dire* examination of the jury panel, as it was a direct reference to liability insurance. As previously noted, Coke failed to state its grounds for objection and did not move for a mistrial. See *Vollington v. Southern Paving Construction Co.*, 166 S.C. 448, 165 S.E. 184 (1932) ("If defendant's counsel felt that the matter was of such moment as to seriously and injuriously affect his clients' interest, he should have moved the court for a nonsuit, or for the ordering of a mistrial. Having failed to do either of these things, he must be held to have elected to take his chances for a favorable issue

of the trial, and therefore to have waived his objections."). However, addressing the merits of the issue, we find no abuse of discretion by the trial judge in posing the question as he did to the jury panel. *See State v. Matthews*, 291 S.C. 339, 353 S.E. (2d) 444 (1986) (The method and scope of *voir dire* are matters largely within the discretion of the trial court.).

Generally, the fact that a defendant is protected by insurance from liability in an action for damages should not be disclosed to the jury. *Bartell v. Willis Construction Co.*, 259 S.C. 20, 190 S.E. (2d) 461 (1972). The reason for the rule is to avoid prejudice in the verdict, which might result from the jury's knowledge that the defendant will not have to pay. *Id.* 190 S.E. (2d) at 463. If insurance is mentioned, the party moving for the mistrial has the burden of showing not only error, but also prejudice. *Sarvis v. Register*, 288 S.C. 236, 341 S.E. (2d) 791 (1986). Further, the mere reference to insurance alone, in a personal injury action, does not necessitate the declaration of a mistrial. *See Billups v. Leliuga*, 303 S.C. 36, 398 S.E. (2d) 75 (Ct. App. 1990) (wherein this court affirmed the denial of a motion for mistrial where the testimony of a chiropractor indicated he was referring to his own billing system and not that of the liability insurance carrier). *See* also *Tucker v. Reynolds*, 268 S.C. 330, 233 S.E. (2d) 402 (1977) (wherein our Supreme Court concurred with the trial judge that the jury was unable to determine whose insurance was being referred to and, after reviewing the context of the testimony, found the defendant was not prejudiced).

In the case at hand, the jury was not informed that Coke was protected by liability insurance. Indeed, the trial judge specifically stated he did not know if there was any insurance involved in this case, and that the existence of any insurance was of no consequence and should not affect the jury in any way. The question was clearly posed, not for the purpose of prejudicing the defendant by making it known Coke had liability insurance, but to insure the jury was not prejudiced against a plaintiff in an action for damages because of a fear of increased insurance rates. While this court cannot condone the deliberate interjection of the possibility of liability insurance covering the defendant, we find no prejudice to the defendant in the context in which insurance was mentioned in the case at hand. Indeed, the manner in which the

trial judge posed the question amounted to a cure of any prejudice before it popped up.

Next, Coke contends the trial judge erred in allowing Mr. Dunn to call a witness who was not listed on his answers to interrogatories. The record reflects the trial of this case began on April 25, 1990. On April 17, 1990, Coke supplemented its answers to interrogatories to list Randy Henkle, an employee of Coke, as a witness. Thereafter, on April 20, 1990, Mr. Dunn took the deposition of Mr. Henkle. Based on Henkle's use of chemical terms in his deposition, Mr. Dunn sought a chemist to explain some of the terms used by Mr. Henkle. The chemist was allowed to testify the same day Coke received notice. According to Mr. Dunn, the chemist was not located until the day he testified.

The decision of whether or not to allow a witness to testify who was not previously listed on answers to interrogatories rests within the sound discretion of the trial judge. *Jackson v. H&S Oil Company, Inc.*, 263 S.C. 407, 211 S.E. (2d) 223 (1975). In deciding whether to allow such a witness to testify, the trial judge should consider the reason the new information was not provided earlier, the purpose of the new information and the prejudice to the opposing party. *Reed v. Clark*, 277 S.C. 310, 286 S.E. (2d) 384 (1982).

It is clear from the record that Mr. Dunn sought and located the chemist within five days of taking the deposition of the Coke employee and that he gave Coke notice of this witness at that time. It appears that Mr. Dunn acted within a timely manner once he learned of the addition of Mr. Henkle as a witness for Coke. It also appears the purpose of the chemist's testimony was to clarify chemical terms previously used in testimony before the jury. He was not called upon to provide any expert opinions about the case. His testimony was clearly neutral. Further, one of Coke's own witnesses, Dr. Marsh, gave similar testimony to that given by the chemist. We find no prejudice to Coke in allowing the testimony of the chemist. Accordingly, we hold there was no abuse of discretion the part of the trial judge.

The third issue before us is whether the trial judge erred in charging the jury on strict liability by failing to include in that charge that Coke was liable only to the extent of proven damages. The record shows the trial judge, after failing to charge

strict liability in its initial charge, called the jury back and charged as follows:

> Mr. Foreman and members of the jury, I'm going to give you some additional instruction .. and you will consider it just as if I had said it along with my regular charge.
>
> One of the causes of action is based on strict liability and strict liability, in essence, says this, that if something occurs and it causes injury, you're liable, it doesn't make any difference. So in this case, the defendant admits that there was something in the coca-cola, so, in essence, they are admitting that they are liable because the statute says that if you send out something that is—and I read that statute to you—and it causes injuries, you're liable. It doesn't make any difference how careful the Coca-Cola Company [is], if this happens, then they are liable and the plaintiff—the defendant is entitled to recover. Now, take that just like as if I had given it to you right along with everything else.

Coke objected, stating, "You stopped at liable. It should have been liable to the extent of the damages proven, I believe." The court noted the objection but found the charge proper taken in context with the other charges.

Where general instructions are sufficiently broad to enable the jury to understand fully the law of the case and the issues involved, the court commits no error in refusing to give a requested charge. *Merritt v. Grant*, 285 S.C. 150, 328 S.E. (2d) 346 (Ct. App. 1985). Without reciting the entire charge given by the trial judge on damages, we note he instructed the jury at least twice that the burden was on Mr. Dunn to prove his damages. We find the charge, given as a whole properly instructed the jury that Coke was liable only to the extent of proven damages.

Finally, Coke contends the trial judge erred in denying its motion for a new trial *nisi remittitur* arguing the award of $165,000 was so excessive that the verdict was the result of some passion, prejudice or capriciousness on the part of the jury. This argument is clearly without merit. In making this argument, Coke sets forth only evidence which is favorable to its position and completely ignores the abundance of evidence supporting the jury verdict. We concur with

the trial judge who, in ruling on this motion, stated, ". . . if they had brought in [a jury verdict] for a million, it wouldn't be worth it if he's suffering from what he says he's suffering from. I wouldn't swap it for a million dollars, so it doesn't shock me." We find no abuse of discretion in the denial of Coke's motion based on the evidence of Mr. Dunn's medical bills, permanent impairment and pain and suffering. *See Billups*, 398 S.E. (2d) at 77. (A motion for a new trial nisi is directed to the sound discretion of the trial judge and his decision to deny such a motion will be upheld unless the verdict is wholly unsupported by the evidence or so excessive as to be the result of caprice, passion, prejudice or sympathy.)

Affirmed.

SANDERS, C.J., concurs and LITTLEJOHN, Acting Judge, dissents in separate opinion.

LITTLEJOHN, Acting Judge, dissenting:

I respectfully dissent and would grant to the Defendants a new trial because of the trial judge's handling of the *voir dire* issue.

The question asked of the jury as quoted in the majority opinion at the beginning of the trial was at the request of counsel for the Plaintiff. Apparently, the judge had misgivings about the question because he inquired: "Are you comfortable with that question, counselor?"

Counselor responded: "Yes sir."

The question was then asked of all jurors before selection of the twelve began. There was no response.

It would be sufficient to say that a new trial should be granted because it erroneously injected into the trial of the case the insurance issue, and indicated that insurance was involved contrary to a legion of opinions issued by the Supreme Court of South Carolina.

In the often quoted case of *Crocker v. Weathers*, 240 S.C. 412, 126 S.E. (2d) 335 (1962) the Supreme Court set forth the rule as follows:

The long-established rule of our decisions is that the fact that a Defendant is protected from liability in an action for damages by insurance shall not be made known to the

jury. The reason of the rule is to avoid prejudice in the verdict, which might result from the jury's knowledge that the defendant will not have to pay it. *Horsford v. Carolina Glass Co.*, 92 S.C. 236, 75 S.E. 533. *Cox v. Employers' Liability Assur. Corp.*, 191 S.C. 233, 196 S.E. 549. *Haynes v. Graham*, 192 S.C. 382, 6 S.E. (2d) 903. *Dobson v. American Indemnity Co.*, 227 S.C. 307, 87 S.E. (2d) 869.

An elaboration upon the reasons for my dissent is, however, appropriate.

No reason was given for the inquiry of the jury panel. If this inquiry is appropriate in this case such is appropriate in any and all tort actions tried hereinafter.

There is not involved here an instance wherein through inadvertence a comment is made inferring that a defendant is covered by liability insurance. In such cases oftentimes the judge is permitted to give a curative instruction. On the other hand here counsel, without indicating a reason therefor, intentionally injects the insurance issue into the trial.

The judge had a fair opportunity to rule upon the issue and did so. It was not incumbent upon defense counsel to harass the judge by parading the issue before him again, by asking for a mistrial.

In *Bowers v. Watkins*, 259 S.C. 371, 192 S.E. (2d) 190 (1972), the Supreme Court held in a case involving a similar issue as follows:

> The suggestion in plaintiff's brief that relief should be denied because the impropriety of the argument was not made the ground of a motion for mistrial or new trial is unsound. When the court, in effect, overruled defendant's objection to the argument, it would have been futile to move for a mistrial based upon the same objection. A motion for new trial is not necessary to preserve for review on appeal a question which has been fairly and properly raised in the trial court and passed upon there. *Hubbard v. Rowe*, 192 S.C. 12, 5 S.E. (2d) 187 (1939).

Counsel for the Plaintiff argues that no prejudice has been shown. Realistically no prejudice can be shown unless counsel is permitted to examine members of the jury—which is forbidden.

The majority opinion would give some credence to the fact that no objection to the inquiry was spelled out by counsel for the Defendants. The grounds for the objection were patent. The law forbids it.

In an effort to justify the inquiry, counsel for the Plaintiff argues many matters having no basis in the record. Quoted in counsel's brief are *Newsweek* magazine, *Business Week* magazine, and *US News and World Report* in which advertisements are alleged to have appeared deploring excessive verdicts.

I would hold that the inquiry itself gave jurors reason to believe that a verdict in this case would be paid by an insurance carrier, and this in spite of the fact that the judge told the jurors that he did not know whether insurance was or was not involved. If the basic principle of law to which I have referred is to be changed, the change should emanate from either the Legislature or the Supreme Court which initiated the rule and has consistently followed it.

If the *voir dire* inquiry is appropriate in this case, the same would be appropriate in a case wherein a Mom and Pop grocery store is being sued in a slip and fall case. The jury would get the impression that Mom and Pop had liability insurance even though they did not.

I would grant a new trial.